ALBERT HAMILTON V. THE STATE.

No. 19169.   Delivered November 10, 1937.

The opinion states the case.

*Tom C. Stephenson* and *F. G. Vaughn,* both of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Appellant was convicted for theft of two hogs alleged to have belonged to W. T. Smith, and his punishment assessed at three years' confinement in the penitentiary.

The only point urged by appellant is that the evidence is insufficient to sustain the conviction, his particular contention

being that the evidence fails to show that he was ever in possession of any hogs on the occasion inquired about, or if he was, that the evidence fails to show they belonged to W. T. Smith.

On the night of the 28th of December, 1936, same being a Monday night, a number of parties were on a fox hunt. Some of them were on Highway No. 87 at a point in Newton County between Burkeville in Newton County and Hemphill in Sabine County, about two miles from the line between the two counties. A car running without lights going towards Hemphill approached the point where the fox hunters were standing. One of them flashed a flashlight, whereupon the car stopped some seventy-five yards from them, but the motor continued to run. Immediately after the car stopped the hunters heard a lot of "scrambling" or "blundering" at the point where the car was stopped, and then the squealing of hogs. After the squealing stopped the car, still without lights, came on towards the hunters. As it passed them a light was flashed in the car by one of them and two parties were in the car. Several of the hunters recognized appellant as one of the occupants and one hunter recognized both of the occupants, one as appellant and the other as appellant's son. After the car had passed them the hunters went to the point where it had stopped; there they found on the ground indications of "scrambling" as one witness expressed it, and "some hog tracks where hogs had fell out on the ground; we could see the print of the hog where it hit the ground * * * there was tracks of two hogs, we found some pieces of wire on the ground. The wire had been twisted up." One witness said the wire was twisted up as though something had been tied with it. On Wednesday appellant saw Mr. Obe Smith near the latter's house and inquired if he had seen any stray hogs. Appellant told witness that he had lost two hogs; that he had them in the back end of his car and they got out. Mr. Obe Smith, on direct examination, said appellant described the two hogs as one black and one white. He was recalled for further examination at which time he testified as follows: "Albert Hamilton described this blue and this black hog. He said they had escaped from him. I later saw the two hogs that corresponded to the identical description Hamilton gave me."

Fred Smith, a son of Obe Smith, was present when appellant was inquiring of his father about the hogs. We quote his testimony: "He was inquiring about some hogs; one of them was black and the other one was a blue one. He said he was bringing the hogs in and they got out of this car over there about a mile from us, about a half mile from where we were talking

then. He said one of the hogs was a black one and the other a blue one. He described the mark on the hogs. The hogs were marked crop and under-bit in one ear and slope and under-bit in the other, he said. I don't remember if he said anything about the hogs being marked exactly alike or in reverse ears. He said the hogs got loose a night or two before then."

Obe Smith testified that appellant described the marks on the hogs he lost as "crop and upper-bit in one ear, and under-slope and under-bit in the other." On January 5th Obe Smith found on the range near his home two hogs. We quote his testimony about them.

"One of the hogs was a black meat hog and one blue one. There wasn't much difference in the size of the hogs; one of them was a little larger than the other. Each one of the hogs was marked crop and under-bit in one ear and under-slope and under-bit in the other, but they were reverse ears. That was the mark the defendant told me the hogs was in he claimed to have lost. The size and description of the hogs corresponded to the size and description of the hogs the defendant told me he had lost. The hogs that I saw were loose on the range. That must have been near a mile with reference to the place the defendant told me he lost the hogs. I knew that D. Moody, Arnold Gilbert and Johnny Gilbert were stopped down on the highway the night of the fox hunt. I went to that place. It was just about a mile from that place to the place I saw this blue hog and the black hog. The fox hunt was on Monday night; it was Wednesday when Hamilton was talking to me and it was the next Tuesday when I saw the hogs."

These two hogs were penned by the officers at Mr. Obe Smith's house. A search of the records in Newton County disclosed that W. T. Smith recorded a mark which led the officers to notify him about the hogs in Obe Smith's pen. W. T. Smith described his mark as under-slope and upper-bit in the right ear and crop and under-bit in the left ear. He described the two hogs in question before ever seeing them after they had been penned at Obe Smith's, and told the officers that in marking them he had reversed the mark on one of them. He went to Obe Smith's, identified the two hogs as belonging to him, and so identified them on the trial. The hogs had been running on their range some twenty-five miles from where they were found, and the owner did not know they were gone until advised about them being in the pen at Obe Smith's place.

Appellant and his son admitted driving along Highway No. 87 on the night of December 28th, and that their car had no

lights. They testified that they had no hogs in the car and put none out. Appellant denied on the trial that he saw any fox hunters along the road on that night, and also denied any conversation with Obe Smith regarding lost hogs. The sheriff testified on rebuttal as follows:

"Before I arrested the defendant he made a statement to me that he went from Burkeville to Hemphill on Monday night, the 28th of December, and that he saw some fox hunters on the road. He said he saw those fox hunters this side of Fairmount. I know where the Obe Smith Place is. I heard Mr. Obe Smith testify on the witness stand, and also the Gilbert boys and Mr. Moody. I could ascertain from the testimony they gave where they stopped on the road, where they were. That was the exact spot that Hamilton said he saw some fox hunters."

Appellant's son was asked on cross examination if he had not told the sheriff that his father had two hogs in the car which he claimed to have gotten from a negro. The son denied so telling the sheriff.

Upon that issue the sheriff testified as follows:

"Jordon Hamilton told me he was with his father in Burkeville on the 28th of December. He said his father had two hogs. He said his father got the hogs from a negro by the name of John Harris. Jordon Hamilton told me the hogs got out of the car back over here where he met those fox hunters. Jordon said they met some fox hunters."

No car other than the one occupied by appellant and his son was seen by the hunters in the vicinity where the hogs appeared to have been unloaded, nor traveling the road in either direction passing said point.

We have not attempted to set out in detail the evidence as it came from various witnesses as to do so would extend this opinion to unpardonable lengths. When considered in its entirety the evidence supports the jury's verdict. No question arises in our minds—and evidently there was none in the jury's mind—that appellant had two hogs in his car on the night of December 28th, 1936, and that they escaped from him, or were turned loose by him, on the road where the car was stopped. That the two hogs later found by Obe Smith and identified by W. T. Smith as belonging to him were the identical hogs which had been in appellant's car seems to admit of no doubt.

The requirements as to circumstantial evidence appear to have been met in the present case.

No bill of exception complaining of any matter is brought

forward and no objection to the court's instructions to the jury were urged and no special charges were requested.

The judgment is affirmed.

*Affirmed.*